47 F.3d 1169
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
John MANFREDI and Janice Manfredi, Plaintiffs-Appellants,
v.
LORRAINE CAB CO., Gerald Eugene Miller, City of Detroit,
City of Detroit Housing Commission, and Hosie
King, Defendants-Appellees.
 No. 93-2296.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1995.
 
 Before: BROWN, KENNEDY, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff John Manfredi ("Manfredi") appeals the district court's grant of summary judgment and denial of the motion for reconsideration. The primary issue is whether Manfredi provided sufficient proof of a serious impairment under Michigan's no-fault vehicle law to recover damages.[1] For the following reasons, we affirm the decisions of the district court.
 
 I.
 
 2
 On June 2, 1990, Manfredi was involved in a motor vehicle accident in Detroit while riding in the defendant Lorraine Cab Company's taxi. An ambulance transported Manfredi to the hospital where an examination revealed a mild compression deformity in his lumbar sacral spine. The hospital provided no treatment, other than a tetanus shot, and recommended follow-up with an orthopedic doctor.
 
 
 3
 Manfredi then contacted his family physician, Dr. Kinkaid, and complained of pain in his back, left shoulder, left ankle, left wrist, left elbow, and a sensation in his legs and left arm. In addition to physical therapy, Dr. Kinkaid ordered that Manfredi undergo an MRI of his cervical spine, lumbar spine, left shoulder, and left elbow, and a CT Scan of his thoracolumbar spine.
 
 
 4
 On June 8, 1990, Dr. William J. Berry wrote a letter to Dr. Kinkaid setting forth his professional opinion regarding Manfredi's injuries. Dr. Berry found "an element of wedging involving the body of T-12 [lumbosacral spine]" and suggested that "[t]his certainly could be from trauma and represent a compression fracture." Dr. Berry, however, found no signs of injury in the plaintiff's cervical spine, vertebrae, discs, left shoulder, and left elbow. Regarding the CT scan of the thoracolumbar spine, Dr. Wushensky found what might have been a very subtle anterior compression.
 
 
 5
 The plaintiff visited Dr. Brigham on August 28, 1990, complaining of pain in his left shoulder and mid and upper back. Dr. Brigham prescribed physical therapy and anti-inflammatory medication, and recommended that the plaintiff follow up with an appointment in six weeks. Manfredi missed this appointment and did not return to Dr. Brigham until January 1991, five months later. At this second appointment, Manfredi complained of pain and numbness in his right shoulder for the first time. Dr. Brigham prescribed a vigorous therapy program, which Manfredi attended sporadically. Moreover, Manfredi did not take the prescribed medication. Dr. Brigham ordered an MRI on the right shoulder, which revealed an apparent partial tear of his right rotor cuff. Injections of cortisone and xylocaine improved the shoulder's condition.
 
 
 6
 Over the next eighteen months, plaintiff returned to Dr. Brigham on at least one occasion, and visited two new physicians, Drs. Mansmann and Kambin. Manfredi has only missed eight hours of work because of the accident.
 
 
 7
 In 1992, plaintiff brought this negligence action under Michigan's No-Fault Act based on alleged injuries from the motor vehicle accident. At the request of the defendants, Manfredi was evaluated by Dr. Stanley Askin on May 21, 1993. Manfredi complained of lower back pain, left shoulder pain, right leg numbness, and neck pain. Dr. Askin found that a March 1991 MRI of Manfredi's right shoulder indicated a condition most consistent with a partial tear. Dr. Askin noted, however, that Manfredi now complained of pain only in his left shoulder, not his right shoulder. Although Dr. Askin agreed that it was conceivable that Manfredi suffered a T-12 compression fracture in the accident, he opined that the area of low back pain did not correspond to the area where a fracture was thought to have occurred. He concluded by noting that the "accident can be seen as potentially serious only with respect to the left shoulder, which sometimes requires surgical intervention...."
 
 
 8
 The district court granted summary judgment in favor of the defendants, finding that Manfredi failed to submit sufficient evidence to show that the impairments were serious. Later, it denied the plaintiffs' motion for reconsideration. Manfredi appeals both of these decisions.
 
 II.
 
 9
 Michigan's no-fault automobile insurance law provides that a person may not recover non-economic loss for tort liability unless the person suffered death, serious impairment of bodily function, or permanent serious disfigurement. Mich.Comp.Laws Ann. Sec. 500.3135(1). The Michigan Supreme Court has noted that "[d]etermining whether a person sustained a serious impairment of body function is a multifaceted problem." DiFranco v. Pickard, 398 N.W.2d 896, 900 (1986).
 
 
 10
 We render de novo review of a grant of summary judgment. Deaton v. Montgomery County, Ohio, 989 F.2d 885, 887 (6th Cir.1993). Viewing the evidence in the light most favorable to the nonmoving party, we must determine: (a) whether a material factual dispute exists as to the nature and extent of the plaintiff's injuries, and (b) whether reasonable minds could differ regarding whether the plaintiff had sustained a serious impairment of body function. DiFranco, 398 N.W.2d at 901.
 
 
 11
 In the instant appeal, however, Manfredi does not argue that there was a material factual dispute regarding the nature and extent of the injury. Accordingly, we must only decide if the district court properly concluded that reasonable minds could not find that Manfredi sustained a serious impairment of body function.
 
 III.
 
 12
 The "serious impairment of body function" threshold contains two inquiries: (a) what body function, if any, was impaired because of injuries sustained in a motor vehicle accident, and (b) was the impairment of body function serious? DiFranco, 398 N.W.2d at 901. The first inquiry is a "relatively easy task." Id. at 914. However, "[d]etermining whether the impairment was serious requires a much more complicated evaluation of factors." Id. Like the district court, we assume arguendo that each of the alleged body functions was impaired, and focus on whether the impairment was serious.
 
 
 13
 The factors to consider in determining the seriousness of impairment include the (1) extent of the impairment, (2) particular body function impaired, (3) duration of the impairment, and (4) treatment required to correct the impairment. Id. The district court considered each alleged impairment in great detail and concluded that the plaintiff had failed to sufficiently demonstrate that any of his injuries affected his body function to such an extent that they be deemed serious impairments. We shall examine each alleged impairment.
 
 
 14
 Manfredi argues that his left shoulder is seriously impaired based on the statements of Drs. Brigham and Askin that surgical decompression might be necessary to alleviate the pain. In light of the DiFranco factors, we hold, as a matter of law, that the plaintiff's left shoulder was not seriously impaired. Although the duration of the impairment is currently over four years, Dr. Mansmann diagnosed the impairment as "resolving shoulder bursitis/tendonitis." Moreover, the extent of the body function impaired is minimal. Plaintiff's own physician, Dr. Brigham, found that Manfredi had a 98% range of motion of the left shoulder. Finally, plaintiff did not present evidence that surgery was the required treatment; he only argued that surgery was a possibility. The district court properly held that Manfredi's left shoulder was not seriously impaired.
 
 
 15
 Next, we consider the plaintiff's alleged impairment of his back. Manfredi argues that the compression deformity or fracture of his T-12 (lumbar sacral spine) constitutes a serious impairment of body function. The district court found that the plaintiff failed to submit sufficient evidence showing serious impairment of the back. We agree with the district court.
 
 
 16
 The extent of the body function impaired is minimal. Dr. Mansmann indicated that Manfredi had a 90-95% range of motion of the lumbosacral spine. Moreover, the duration of the impairment and the required treatment support a finding that the back was not seriously impaired. Dr. Brigham's report revealed that Manfredi had improved after physical therapy, and that Manfredi's back should continue to improve so that it would cause no problems in the future. All of the doctors who examined Manfredi's back only recommended physical therapy. Furthermore, Manfredi's sporadic participation in therapy suggests that the impairment was not serious. Manfredi's only support here is that his back function prevents him from sitting or walking for long periods of time, riding his lawnmower, wrestling with his son as often, or playing golf as often. This support, standing alone, is insufficient to show that Manfredi's back is seriously impaired.
 
 
 17
 The plaintiff also argues that his right shoulder is seriously impaired. We agree with the district court that reasonable minds could not disagree regarding the lack of serious impairment to Manfredi's right shoulder. First, Manfredi did not complain about his right shoulder until January 1991, over seven months after the automobile accident.[2] Even assuming that the right shoulder problem was caused by the accident, Dr. Brigham noted that injections improved the condition of his shoulder. Finally, Manfredi did not complain about his shoulder at the most recent examination of May 21, 1993, when Dr. Askin found that Manfredi had unrestricted motion in his right shoulder to 180 degrees of forward flexion and abduction.
 
 
 18
 Lastly, the plaintiff claims serious impairment of his neck, left ankle, left arm, left leg, and right leg. These claims are without merit. Reasonable minds would agree that these alleged impairments are not serious.
 
 IV.
 
 19
 Plaintiff also argues that the district court prematurely granted summary judgment, and, thus, should have granted the motion for reconsideration. As the defendants accurately characterize, "[p]laintiffs' argument boils down to a complaint that the court did not have the benefit of their affidavits or the treating doctor's trial testimony [on video] before it rendered its decision." The plaintiff has made no explanation for his failure to submit more evidence.
 
 
 20
 Local Rule 7.1(h)(3) of the Eastern District of Michigan requires a party moving for reconsideration to demonstrate a palpable defect that was both misleading and prejudicial. The plaintiff did not meet this requirement. The district court properly denied the plaintiff's motion.
 
 
 21
 AFFIRMED.
 
 
 
 [1]
 Although Janice Manfredi was also a plaintiff, she is suing only for loss of consortium
 
 
 [2]
 The district court found that the right shoulder was not impaired by the accident, and, thus, summary judgment could have been granted without engaging in the "seriousness" inquiry. The court made similar findings regarding Manfredi's left arm, left ankle, neck, and legs